UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANE S. STROUP,

Plaintiff,

v. Case No. 8:25-CV-00492-JLB-SPF

PODS ENTERPRISES, LLC,

Defendant.
_____________________________________/

**ORDER**

Before the Court are Defendant's *Daubert* motions to exclude or limit the expert testimony of Tracy J. Murrell (Doc. 42) and Joseph Bax (Doc. 43). Plaintiff has filed responses in opposition to both motions (Docs. 44–45). For the reasons stated herein, Defendant's motions are granted in part and denied in part.

## I. Factual Background

This is a personal injury action arising from the delivery of a PODS storage container. (Doc. 1). As alleged by Plaintiff, on July 15, 2023, a PODS storage container was delivered to Plaintiff's home. (Doc. 1, ¶ 12). During the delivery, PODS driver Larry Szczepanski used PODS' proprietary PODZILLA® hydraulic lift system to lower the container onto Plaintiff's driveway. (Doc. 1, ¶ 15; Doc. 44 at 1–2). After the container was lowered, Mr. Szczepanski noticed the container's door would not open properly and subsequently raised the container a few inches of the ground. (Doc. 1, ¶ 17). Mr. Szczepanski then removed several of the items blocking the door which Plaintiff brought into her home. (Doc. 1, ¶ 17; Doc. 44 at 2). When Plaintiff returned to her driveway, she did not see Mr. Szczepanski. (Doc. 1, ¶ 18). Plaintiff then began to remove another item from the POD at the same Mr. Szczepanski began to

lower the front of the POD, crushing Plaintiff's left foot between the POD and the ground in the process. (Doc. 1, ¶¶ 19–21). Plaintiff now brings the instant suit against PODS Enterprises, LLC seeking damages for her alleged injuries and emotional distress.

## II. Legal Standard

The decision to admit or exclude expert testimony is within the trial court's discretion, and the court enjoys "considerable leeway" when determining the admissibility of that testimony. *Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993), the admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion ... if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. "Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through

> the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and while they "remain distinct concepts," "the courts must take care not to conflate them." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)).

As for the qualification prong, an expert may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand." *See id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. Jun. 25, 2009)).

As to whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261–62 (citation and internal quotation marks omitted). To make this determination, the district court typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *See id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-*

*Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). The Eleventh Circuit has emphasized that the four factors above are not exhaustive, and a court may need to conduct an alternative analysis to evaluate the reliability of an expert opinion. *See id.* at 1262 ("These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion."). Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *See id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

Finally, the helpfulness of an expert's testimony turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *See id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *See id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

It is important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech.*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof

are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## III. Analysis

### A. Tracy J. Murrell

Plaintiff has retained Tracy J. Murrell of Murrell Advisory Services, LLC as a liability expert based on her experience as a "transportation and safety professional." (Doc. 44 at 4). Ms. Murrell received a Master's Degree in Human Factors and Systems Engineering from Embry Riddle Aeronautical University in 2022 and a Bachelor's Degree in Marine Transportation from Texas A&M University in 2012. (Doc. 44-1 at 166). She is also a member of the Human Factors and Ergonomics Society and the American Association of Safety Professionals. (*Id.*). Prior to working in the expert witness space, Mr. Murrell held numerous safety and logistics roles including Fleet Safety Director with TOTE Services, EHS, Global Road Safety Director with Amazon.com, Inc., Vice President of Maritime Safety & Compliance with Royal Caribbean Cruises, Ltd., and Marine Risk Management Superintendent with BP. (*Id.*).

Based on her review of Plaintiff's complaint, Plaintiff's deposition testimony, Mr. Szczepanski's deposition testimony, and incident-related documents, photographs, and witness statements, Ms. Murrell asserts the following opinions[1]:

1. Mr. Szczepanski lacked situational awareness and violated basic safety principles in lowering the container without confirming Plaintiff's location.

[1] Ms. Murrell produced an initial report on October 30, 2025, and two supplemental reports on January 15, 2026, and February 24, 2026. (Doc. 44-1 at 4–24).

2. Mr. Szczepanski did not communicate or enforce safe practices under OSHA regulations and ANSI guidelines.
3. PODS lacked adequate procedures for establishing exclusion zones or using spotters during lifting and lowering operations.
4. Mr. Szczepanski's actions indicate insufficient training in safe hoisting techniques and public safety awareness.
5. Allowing unloading while the container was suspended introduced unnecessary risk and violated industry best practices.
6. PODS lacked audible and visual warning devices to alert nearby individuals during lifting and lowering operations which are standard safety measures on equipment that moves or suspends loads, serving to warn personnel or the public of imminent motion.
7. The asserted safety zone was not clearly communicated.
8. The safety zone was not physically established or reliably implemented.
9. The absence of an effective safety zone increased the risk of inadvertent entry into the hazard area.

(Doc. 44-1 at 4–24). Defendant argues that Ms. Murrell's opinions should be stricken because they are not the product of reliable methodology. (Doc. 42 at 6). Specifically, Defendant argues that Ms. Murrell's opinions consist entirely of impermissible ipse dixit, rely on inapplicable OSHA, ANSI, and ASME standards, are largely speculative, and are unreliable and unsupported because Ms. Murrell did not conduct any inspections or review any training materials. (Doc. 42 at 6–13). Defendant further maintains that Ms. Murrell lacks the minimum qualifications necessary to proffer opinions related to the portal moving storage industry because she has no experience in this field. (Doc. 42 at 14).

In response, Plaintiff argues that Ms. Murrell is qualified to render expert opinions on safety procedures and liability, a physical inspection was unnecessary, experts may utilize regulatory or industry standards from related industries when rendering their opinions, and Ms. Murrell's failure to read training materials goes to weight not admissibility. (Doc. 44 at 13–18).

As an initial matter, the Court finds that Ms. Murrell has the relevant education, training, and experience to opine as to the safety and liability issues in this matter. Though Ms. Murrell has not worked directly in the isolated field of "portal moving storage," her education and prior experience with cranes, boom lifts, and maritime container transportation, which, as noted by Plaintiff, are essentially large PODS, qualifies Ms. Murrell to present safety opinions in this case. *See Pleasant Valley Biofuels, LLC*, 2014 WL 2855062 at *2 (noting that inquiry into the qualifications of an expert is not stringent and that an expert need only be "minimally qualified" to render opinions). However, "that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1262. Indeed, "under Rule 702, the *reliability* criterion remains a discrete, independent, and important requirement for admissibility." *Id.* (emphasis in original).

Here, though Ms. Murrell is qualified, her opinions regarding PODS safety procedures and Mr. Szczepanski's training, or alleged lack thereof, are not sufficiently reliable as Ms. Murrell did not review any of PODS training materials, certification requirements, or training records. (Doc. at 9:14–16, 25:7–18). Under Rule 702(b), expert testimony must be based on "sufficient facts or data." Here, Ms. Murrel's opinion on these matters is based solely on her review of Mr. Szczepanski's deposition testimony. This is insufficient to meet the standard

set forth under Rule 702(b). *See Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1362 (S.D. Fla. 2015) (striking expert opinion personnel involved in subject incident did not receive proper training because the plaintiff's proposed expert had merely reviewed the deposition testimony of the personnel involved but failed to review actual personnel files, training records, and training policies). Accordingly, the Court finds it appropriate to strike Ms. Murrell's opinions regarding PODS safety procedures and Mr. Szczepanski's training. *See Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir.2003) ("[O]ur caselaw plainly establishes that one may be considered an expert but still offer unreliable testimony.").

Moreover, under Rule 702(a), the expert testimony must offer some scientific, technical, or otherwise specialized knowledge. Here, the opinions offered in Ms. Murrel's second amended report—the safety zone was not clearly communicated or reliably implemented resulting hazardous entry—is not the result scientific, technical, or otherwise specialized knowledge. Indeed, in reaching these conclusions, Ms. Murrell does not cite to any industry standard or specialized knowledge. (Doc. 44-1 at 21–24). Instead, Ms. Murrell merely reviewed Mr. Szczepanski's testimony that no cones, barricades, markings, or other visual indicators were used to delineate the "safety zone" during the delivery and concluded that safety zone was not reliably established, leading to injury. (Doc. 44-1 at 23). However, this opinion "offers nothing beyond the understanding and experience of the average citizen." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). Moreover, even if these opinions could be said to offer specialized knowledge, because they are not tied to any reliable methodology, they would still be impermissible *ipse dixit*. *Id.* ("[N]othing in either *Daubert* or

the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.”).

However, the Court finds the remainder of Ms. Murrell’s opinions are the by product of sufficiently reliable methodology. Though Defendant argues that Ms. Murrell impermissibly relied on regulations and standards governing construction cranes and industrial hoisting operations from the Occupation Safety and Health Administration (OSHA), American National Standards Institute (ANSI), and American Society of Mechanical Engineers (ASME), district courts in this Circuit have recognized that experts may rely on these standards as evidence of industry norms and customs. For example, in *Long v. Amada Mfg. Am., Inc.*, the Court permitted the plaintiffs’ expert to discuss OSHA regulations and ANSI standards even though the defendant, as a manufacturer, was not subject to OSHA regulations. No. CIV.A. 1:02-CV-1235, 2004 WL 5492705, at *14 (N.D. Ga. Mar. 31, 2004). In doings so, the court specifically differentiated between the use of “borrowed” regulatory or industry standards as evidence of a permissible standard of care versus conclusive liability evidence:

> [T]estimony regarding the OSHA regulations and ANSI standards is only admissible so long as Plaintiffs' experts offer the testimony as evidence of industry standards and customs. While the experts may discuss the OSHA regulations and ANSI standards as illustrative of negligence . . . they must not suggest that non-compliance with the regulations and/or standards is conclusive as to liability.

*Id.*; *see also Bhoodai v. Emps. Assurance Co.*, No. 3:19-CV-111 (CAR), 2022 WL 4591239 (M.D. Ga. Sept. 29, 2022) (“But evidence of a manufacturer's compliance with ISO standards, ANSI standards, and OSHA regulations is relevant, albeit not determinative, in deciding whether the manufacturer met the standard of care.”); *KMC Acquisition Corp. v. Escoe Indus. Mech., Inc.*, No. 3:15-CV-119 (CAR), 2018 WL 1528210, at *6 n.57 (M.D. Ga. Mar. 28, 2018)

("Although, OSHA regulations and ANSI/ASSE standards do not create Defendant's duty here, these standards and regulations illustrate a breach of the independent duty Defendant owed Plaintiff by providing evidence of the standard of care.").

Here, Ms. Murrell analogized these regulations to the facts of the instant matter and based on her experience and training, opined as to believed safety errors in the operations. Though this analysis is largely rudimentary, the Court finds that it meets the *Daubert* standard and is therefore admissible. *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) ("The Supreme Court did not intend, however, that the gatekeeper role supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (quotations removed); *see also Kuhlman v. Louisville Ladder, Inc.*, No. 8:12-CV-1238-T-EAJ, 2013 WL 12157944 (M.D. Fla. Dec. 13, 2013) ("Where testimony may involve the application of basic scientific principles, and the opposing party has the opportunity to cross examine the expert, testing is not always required.").

**B. Dr. Joseph Bax**

Dr. Joseph Bax is a triple board-certified and fellowship trained interventional physiatrist currently serving as Chief of Physiatry within the Orthopedic Spine Center at Mount Sinai Hospital Spine Center. (Doc. 45-1 at 4, 50:6–17). Physiatrists are doctors who assist in managing conditions affecting the skeletal and nervous systems.[2] Dr. Bax specializes in pain management and hospice and palliative care. (Doc. 45-1 at 50:6–10). He obtained his Doctor of Osteopathy in 2010 from Midwestern University Chicago College of Osteopathic Medicine, completed residency at The John Hopkins University, and completed a pain

[2] https://my.clevelandclinic.org/health/articles/physiatrist

management fellowship at Beth Isreal Hospital in New York City (Doc. 45-1 at 5, 50:25–51:7). Dr. Bax has received training in foot and ankle trauma, crush injuries, and complex regional pain syndrome. (Doc. 51:8–15). Dr. Bax is also certified as a life care planner through the International Commission of Healthcare Certification which he obtained in 2021. (Doc. 45-1 at 52:10–15).

Dr. Bax was retained as an expert to review Plaintiff's medical record and testify regarding the cause of Plaintiff's injuries and the future needs and costs of her medical care. Dr. Bax provided an expert report (Doc. 43-1) and has been deposed in connection with his proposed testimony (Doc. 45-1 at 44–108). Defendant now moves to exclude Dr. Bax's testimony arguing that Dr. Bax's opinions do meet Rule 702's reliability requirements. (Doc. 43). For the reasons explained below, the Court disagrees.

Taken together, Defendant essentially argues that Dr. Bax's opinions are not based on sufficient facts and data and reliable methodology because Dr. Bax did not mirror his opinions with Plaintiff's treating physicians and included costs Plaintiff has deemed speculative. (Doc. 43 at 7–13). Plaintiff counters that Dr. Bax used the methodology he was taught as part of his life care training in conjunction with his experience and knowledge as a board-certified physician and was not required to coordinate his opinions with Plaintiff's treating physicians. (Doc. 45 at 12–16). Plaintiff has the better argument.

Prior to opining as to Plaintiff's future medical needs, Dr. Bax completed a comprehensive review of Plaintiff's medical records, analyzed the opinions of Plaintiff's treating physicians, and conducted his own physical examination of Plaintiff, albert over

Zoom.[3] Based on this sound methodology, Dr. Bax then opined as to the anticipated future needs and costs of Plaintiff's medical care within a reasonable degree of medical probability. Accordingly, the Court finds there is a sufficient factual and analytical foundation in Dr. Bax's report to support his findings. *See Woienski v. United Airlines, Inc.,* 383 F. Supp. 3d 1342, 1348 (M.D. Fla. 2019) (stating that "an expert is permitted to form conclusions by extrapolating from existing data.") (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Notably, the methodology Defendant advocates for—that Dr. Bax only propose the recommendations of Plaintiff's treating providers—could render Dr. Bax's opinions unreliable since he must predicate his findings on his independent judgment. *See Mchale v. Crown Equip. Corp.*, 2021 WL 289346, at *3 (M.D. Fla. Jan. 28, 2021), *aff'd,* 2022 WL 4350702 (11th Cir. Sept. 20, 2022) ("Inappropriate parroting occurs when an expert adopts another expert's opinion wholesale, without reaching independent conclusions in reliance on that opinion.") (citations omitted). Here, Dr. Bax acknowledged Plaintiff's existing treatment and built upon this, using his background as a bord-certified physiatrist and certified life care planner. For example, Dr. Bax explicitly included many of Plaintiff's treating physicians' recommendations including but not limited to continued pain care management consultations (Doc. 45-1 at 74:16–21), regulatory toxicology screenings (Doc. 45-1 at 75:11–19), consultation with a psychiatrist (Doc. 45-1 at 14–19), and a left lumbar sympathetic block (Doc. 45-1 at 75:23–76:4). Though Plaintiff takes issue with Dr. Bax's physical therapy recommendation, at deposition Dr. Bax explained that Plaintiff had previously been

[3] In its motion, Defendant makes passing references suggesting that the completion of Plaintiff's evaluation virtually defeats the credibility of Dr. Bax's analysis but offers no authority to support this proposition. (Doc. 43 at 7). For the reasons discussed herein, the Court finds that Dr. Bax's opinions are supported by reliable methodology, including the virtual examination of Plaintiff.

recommended extensive physical therapy, and it was his opinion that Plaintiff would benefit from it in the future as well. (Doc. 45-1 at 73:16–74:8). Similarly, as a physiatrist, Dr. Bax was qualified to recommend Plaintiff seek an evaluation from another physiatrist and undergo PCP injections.

Moreover, the case law cited by Defendant is unavailing. In *Trinidad v. Moore*, a portion of the life care planner's opinion was excluded because the life care planner recommended the plaintiff undergo surgery when there was no indication in the plaintiff's medical records a surgery of any kind was needed. 2016 WL 5341777, at *7–8 (M.D. Ala. Sept. 23, 2016). Moreover, the lifecare planner admitted at deposition she did not know what a surgeon would recommend for the plaintiff's condition. *Id.* Here, Dr. Bax has not recommended any unsupported surgeries. Similarly, in *Rinker v. Carnival Corp.*, the Court found that the plaintiff's life care plan was unsupported because it presumed the plaintiff was a healthy 62-year-old woman when it was undisputed that the plaintiff had stage three colon cancer, relied solely on the opinion of Plaintiff's life care planner, who was not an expert in any medical specialty, and was made without any consultation with the plaintiff or the plaintiff's doctors. No. 09-23154-CIV, 2012 WL 37381, at *1–2 (S.D. Fla. Jan. 6, 2012). Here, Dr. Bax is a board-certified physiatrist who devotes 80% of his time to clinical practice. (Doc. 45-1 at 52:3–9). Moreover, Dr. Bax consulted with Plaintiff and reviewed the recommendations of Plaintiff's treating physicians. Ultimately, while the recommendation of a treating physician is relevant, a life care plan that contains recommendations that a treating physician did not make is not the dispositive, bright-line rule that Defendant wishes it to be. As such, Dr. Bax's opinions as to Plaintiff's future medical needs are reliable.

As to costs, Defendant makes the sweeping assertion that because Dr. Bax's projected treatments were not recommended by Plaintiff's actual treating providers there is therefore "no guarantee that she will even undergo these courses of treatment or incur the costs associated with same." (Doc. 42 at 43). As a specific example, Defendant cites to Dr. Bax's recommendation that Plaintiff will require an ambulatory service approximately every two to three years for a fall, based on Plaintiff's history of falling since the accident which Dr. Bax attributed to Plaintiff's loss of mobility, balance, and range of motion in her left foot. (Doc. 45-1 at 38:5–13). However, for the reasons discussed above, the Court finds that Dr. Bax has supported his treatment recommendations with reliable methodology. That a plaintiff may choose not to undergo a certain treatment in a life care plan is an inherent vulnerability in every life care plan and something that Defendant may address on cross-examination at trial. The same goes for Defendant's argument that Plaintiff may not incur the costs of an ambulatory service. Accordingly, the Court finds Dr. Bax's opinions as to Plaintiff's future medical costs are reliable and admissible. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## IV. Conclusion

It is ORDERED:

1. Defendant's *Daubert* Motion to Exclude or Limit the Expert Testimony of Tracy J. Murrell (Doc. 42) is **GRANTED** to the extent that Ms. Murrell is prohibited from offering opinions regarding PODS safety and training procedures, Mr. Szczepanski's training, and the establishment of a "safety zone." Furthermore, Ms. Murrell may not opine or suggest that non-compliance with OSHA, ANSI, and ASME regulations and

standards is conclusive as to liability in this matter. The motion is **DENIED WITHOUT PREJUDICE** in all other respects.

2. Defendant's *Daubert* Motion to Exclude or Limit the Expert Testimony of Joseph Bax (Doc. 43) is **DENIED WITHOUT PREJUDICE**.

**ORDERED** in Tampa, Florida, on October 7, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE